JULIE A. MANNING, Plaintiff, v. KAREN A. HAZEKAMP *et al.*, Defendants and Third-Party Plaintiffs-Appellants (The City of Champaign *et al.*, Third-Party Defendants-Appellees.).

Fourth District   No. 4—90—0585

Opinion filed March 28, 1991.

120

Sheldon A. Brenner, of Bresler, Brenner, Moltzen & Harvick, of Chicago, for appellant Bryan A. Malis.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Francis A. Spina, of counsel), for appellants Karen A. Hazekamp and Advertising Products International, Inc.

Thomas, Mamer & Haughey, of Champaign (Richard R. Harden, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Julie Manning (Manning) was thrown from a motorcycle driven by defendant Bryan Malis (Malis) and sustained severe personal injuries when the motorcycle collided with a car driven by defendant Karen Hazekamp (Hazekamp). Subsequently, Manning filed suit to recover for these injuries naming Hazekamp, Advertising Products International, Inc. (API), as the owner of the car, and Malis as defendants. Thereafter, Hazekamp, API, and Malis (third-party plaintiffs) filed third-party actions for contribution against the City of Champaign (City). The circuit court granted summary judgment in favor of the City on July 20, 1990. Third-party plaintiffs appeal that order, contending the circuit court erred in granting summary judgment to the City by determining that, as a matter of law, the City owed no duty to them. We affirm.

On September 30, 1984, there was an automobile-motorcycle accident at the intersection of Gregory and Arbor Streets in Champaign, Illinois. These streets form a "T" intersection. Gregory Street runs east-west while Arbor Street runs north-south. There is a stop sign on Arbor Street, but there are no traffic-control signals for traffic on Gregory Street. Gregory has one lane for each direction of traffic and has a dashed line down the center. There is parking available on the north side of Gregory and there were cars parked there on the day of the accident. The police report from the accident indicated the front of the car parked east of Arbor Street, closest to the intersection of Arbor and Gregory, was 36 feet from the corner while there was a "no parking" sign approximately 30.7 feet from the corner. Arbor Street had no traffic other than the car driven by Hazekamp. Malis stated he could not remember if there was traffic in front of him on

Gregory Street, but if there was, it was only light traffic. Malis also stated his maximum speed on Gregory that day was 35 miles per hour.

Hazekamp was traveling southbound on Arbor Street when she reached the intersection. As she came to the intersection, she wished to make a left-hand turn onto Gregory. Hazekamp made a complete stop at the stop sign, which was located approximately two feet north of the intersection. Hazekamp looked both ways to check the oncoming traffic. The view to the right was unobstructed but the parked cars to her left blocked her view of westbound traffic on Gregory. Thus, in order to get a better view of the westbound traffic, she released the brake and proceeded to inch out into the intersection. The front end of Hazekamp's car was approximately at the centerline of Gregory by the time she inched out far enough to see past the parked cars. It was at this point that the collision occurred. Hazekamp stated the first time she saw the motorcycle was when her car was even with the centerline of Gregory. Malis stated the first time he saw Hazekamp's car was when it was already into the intersection and the reason he did not see the car before was because the parked cars blocked his line of sight.

Hazekamp retained an expert to analyze this intersection in terms of the ability of a driver of an automobile on Arbor Street to see approaching traffic on Gregory. Assuming the distance between the intersection and the car parked closest to it was 36 feet (as it was the day of this accident), the expert made three separate calculations to determine the distance a driver on Arbor Street could see up Gregory to judge the approaching traffic. Depending upon where the car on Arbor stopped to view the oncoming traffic, the expert concluded that a driver would be able to see up Gregory anywhere from 77 feet to 106 feet. The expert stated certain manuals relied upon by persons in this industry, although never adopted by the City or the State of Illinois, recommended a sight distance of 300 feet for this type of intersection. This sight distance would give the driver on Arbor an adequate view of oncoming traffic to determine if it was safe to proceed with a left turn.

The expert concluded that in order to provide this 300-foot sight distance, parking should be prohibited for 60 feet from the corner of Arbor. This would mean the elimination of approximately two parking spaces on Gregory. Having a "no parking zone" beginning 60 feet from the corner would give a sight distance of 255 feet up Gregory to a driver on Arbor, which the expert believed to be adequate for drivers attempting a left turn. This gap of 60 feet would be the absolute

minimum on a practical basis that would be acceptable in order to give a driver on Arbor Street a sufficient view of the oncoming traffic.

Third-party plaintiffs contend the circuit court erred in determining the City owed no duty to them. Third-party plaintiffs argue the City's duty to maintain its roads in a reasonably safe condition (Ill. Rev. Stat. 1987, ch. 85, par. 3—102) includes the duty to maintain adequate sight distances at intersections such that drivers have a sufficient view of oncoming traffic. Third-party plaintiffs allege the City breached this duty and its negligence proximately caused Manning's injuries.

The City contends, first, it owes no duty to third-party plaintiffs to maintain the sight distances recommended by third-party plaintiffs' expert witness. The City argues it fulfilled its duty to maintain its roads in a reasonably safe condition by placing the stop sign at the corner of Arbor and Gregory Streets. Since the stop sign was clearly visible, the City argues it satisfied its duty to maintain its roads in a reasonably safe condition. Furthermore, since Hazekamp knew she had to yield the right-of-way to oncoming traffic, any negligence on the part of the City was not a proximate cause of the accident but merely a condition of the accident.

■■ Summary judgment should only be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Summary judgment is proper when only a question of law is involved. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.

■■ ■ The elements for a negligence cause of action are (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately resulting from that breach. The questions of breach and proximate cause are questions of fact to be determined by a jury while the existence of a duty must be determined by the court as a matter of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162-63, 456 N.E.2d 116, 118-19.) To determine if a duty exists, it is necessary to inquire whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) The foreseeability that the defendant's conduct will result in injury to another as well as the likelihood of an injury occurring, the burden on the defendant by imposition of a duty, and the

consequences of imposing this burden must all be considered in determining that a duty exists. *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231.

■ There is no question that a local governmental unit has the duty to exercise ordinary care to maintain its streets in a reasonably safe condition. (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, 404 N.E.2d 213, 220.) Section 3–102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) codifies this duty. (Ill. Rev. Stat. 1987, ch. 85, par. 3–102.) There is no authority which stands for the proposition that a public entity breaches its duty by allowing an area adjacent to an intersection to pose visual obstructions of traffic to oncoming drivers although there was a clearly visible, properly maintained traffic signal plainly observable to all drivers concerned. (*Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62.) The exception to this rule is where there is a statutory directive requiring a public entity to remove any visual obstructions. (See *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) It would be entirely reasonable for a city to believe it has satisfied its duty to maintain a reasonably safe intersection by providing clearly visible and functional traffic signals when taking into account the rule that motorists who have a green light may assume that intersecting traffic will obey their traffic signals. *Boylan,* 103 Ill. App. 3d at 341, 431 N.E.2d at 67.

Third-party plaintiffs argue this court's decision in *West v. Kirkham* (1990), 201 Ill. App. 3d 1051, 560 N.E.2d 632, supports their position. In *West,* plaintiff was involved in an automobile accident in Urbana, Illinois. The intersection in question was a four-way intersection with traffic signals for northbound and southbound traffic. The northbound traffic lanes had a separate left-turn lane and left-turn arrow on the control light, while the southbound traffic lanes had neither. Plaintiff argued, among other things, that the City of Urbana was guilty of negligence for failing to provide southbound traffic with a left-turn arrow. The City of Urbana moved for summary judgment alleging plaintiff's complaint failed to state a cause of action. The trial court granted summary judgment in favor of the City of Urbana.

We reversed, holding there was a genuine issue of material fact as to whether the City of Urbana's failure to provide a left-turn arrow for southbound traffic after providing a left-turn arrow for northbound traffic made the roadway dangerous at the intersection. (*West,* 201 Ill. App. 3d at 1054, 560 N.E.2d at 634.) Plaintiff argued the trial court erred in citing section 3–104 of the Act (Ill. Rev. Stat. 1987, ch. 85, par. 3–104) as controlling. That section provides a municipal-

ity with immunity from tort liability for the *initial* failure to provide traffic control signals. (*Smith v. County of White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19.) In *West,* the City of Urbana chose to provide a left-turn arrow for one direction of traffic but not for the other direction of traffic on the same road. Thus, we stated this precluded the City of Urbana from tort liability immunity under the Act. Therefore, there was a genuine issue of material fact as to whether this asymmetrical regulation made the intersection dangerous and summary judgment was thus improper.

Several distinctions between *West* and the present case can be drawn. First, *West* was premised on the interpretation of section 3—104 of the Act, while the issue of the present case involves the scope of the common law duty of a local governmental unit to maintain its property in a reasonably safe condition. This common law duty has subsequently been codified as section 3—102(a) of the Act. (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).) Thus, the issue in *West* involved the section of the Act providing a municipality with tort liability immunity, while the present case addresses the scope of the common law duty imposed upon a municipality. The second distinction between *West* and the present case is a factual one. In *West,* plaintiff argued that a question of material fact existed because the City of Urbana chose to regulate traffic at the intersection in an asymmetrical fashion. Thus, a question of fact existed as to whether this asymmetrical regulation made the roadway dangerous. Here, third-party plaintiffs do not argue because the City chose to place a stop sign on Arbor Street but not on Gregory Street, the intersection has been made dangerous. Rather, it is third-party plaintiffs' position that the placement of the parked cars and the creation of the "no-parking" zone on Gregory which blocked the Arbor Street driver's line of sight made the intersection dangerous. The placement or absence of the stop sign is not the issue in the present case. For these reasons, we find our decision in *West* is not controlling here.

In *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, plaintiff was injured when his bicycle collided with a dump truck that had exited defendant's driveway which driveway was not visible from the roadway due to foliage growth on defendant's property. The supreme court held that under the facts of the case, defendant could not have reasonably foreseen that the driver would exit the driveway without first ascertaining whether there was any oncoming traffic. (*Ziemba,* 142 Ill. 2d at 52.) The court found defendant did not have a duty to maintain his property so that the plaintiff could see the driveway from the adjacent roadway. *Ziemba,* 142 Ill. 2d at 52.

The court noted the foliage alone was not dangerous, but it and the driveway only became dangerous by the addition of the dump truck exiting onto the road. The court reasoned the driver of the truck violated his statutorily imposed standard of care when he exited the driveway without yielding the right-of-way to traffic on the adjacent road. (*Ziemba*, 142 Ill. 2d at 50.) The court stated defendant had a right to expect the driver to check for oncoming traffic before entering the roadway. Since the condition on defendant's land posed no danger to the plaintiff without the independent negligent act of the driver, the court found the accident in this case was not a reasonably foreseeable result of the condition on defendant's land. *Ziemba*, 142 Ill. 2d at 51-52.

The court reasoned that the imposition of this duty on defendant to maintain his property so that his driveway would be visible to travelers on an adjacent roadway would amount to imposing a duty on him to guard against injuries occurring off his land. But since the condition on defendant's land was not dangerous without the driver's negligent act, this would be imposing a duty on defendant to guard against the negligence of others. " '[[T]he] imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society.' " *Ziemba*, 142 Ill. 2d at 52, quoting *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 366, 537 N.E.2d 738, 745.

■ The parked cars here were not dangerous by themselves but only became dangerous when drivers attempted to see around them to make a left-hand turn. Furthermore, the City had a right to expect that Hazekamp would not violate her statutory duty to yield the right-of-way to oncoming traffic and that she would check for oncoming traffic before attempting her left-hand turn. Since the parked cars alone posed no danger, the condition created by the City only became dangerous by the intervening negligent act of Hazekamp. Thus, this accident cannot be viewed as a reasonably foreseeable result of the condition created by the City. But for the negligence of Hazekamp, the accident would not have occurred. In addition, the imposition of this duty on the City would amount to imposing a duty to guard against the negligence of others. The City had the right to expect Hazekamp would obey the rules of the road and, thus, it should not have to guard against her negligence when she disobeys them.

Third-party plaintiffs maintain *Ziemba* is distinguishable because the obstruction created by the City in this case was on a public street while the obstruction created by the defendant in *Ziemba* was on a private driveway. We decline to draw such a distinction.

First, the decision in *Ziemba* was not premised on the status of the defendant as a private landowner. Rather, the decision focused on the reasonable foreseeability of this type of accident occurring, regardless of whether the obstruction in question was on public or private property. There is no indication in the court's opinion that it would have reached a different result had the driveway in question been from a public parking lot rather than a private homeowner's property.

Furthermore, our research has revealed no cases which have imposed the duty urged by third-party plaintiffs on a municipality solely because the obstruction in question was on public property. In fact, this court has specifically found the question of who owns the land containing the obstruction is immaterial to the duty issue. (*Esworthy v. Norfolk & Western Ry. Co.* (1988), 166 Ill. App. 3d 876, 520 N.E.2d 1044.) In *Esworthy*, the court stated:

> "[T]he various third parties have argued extensively over who actually owns the land containing the trees in question. We find that question is immaterial. There is no duty owed in Illinois for trees obstructing visibility of motorists on an adjoining highway by either a municipal landowner or a private one at a controlled intersection and the visibility of the traffic controls has not been obstructed." (*Esworthy*, 166 Ill. App. 3d at 879, 520 N.E.2d at 1046.)

As previously noted, the only exception to this rule is where there is a statutory directive requiring a city to remove the visual obstructions. Therefore, we reject third-party plaintiffs' suggestion that *Ziemba* is not controlling because of the difference in location of the obstruction.

In further support of our conclusion that *Ziemba* is controlling, we note the facts in the present case are analogous to those in *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201. In *Lindenmier*, plaintiff attempted a left turn across traffic on a full green light (as opposed to a green arrow). Plaintiff thought it was safe to go through the intersection and execute the turn; however, it was not and she collided with another car traveling in the opposite direction. In plaintiff's deposition, she admitted she knew that a full green light meant she must yield the right-of-way to oncoming traffic. Plaintiff testified she believed she could execute the turn without incident because of a mistaken belief that the oncoming traffic had a red light. The court upheld summary judgment in favor of the city, stating it was not reasonably foreseeable as a matter of law that plaintiff would believe she could make this left turn safely on a solid green light in the absence of green turn arrows or other indicia of traffic

regulation. (*Lindenmier*, 156 Ill. App. 3d at 91, 508 N.E.2d at 1212.) The court further stated the city could not reasonably anticipate plaintiff would disregard the acknowledged, statutorily prescribed response to the display of full, circular green traffic lights and proceed on her mistaken belief that a left turn could be safely executed because a car on the other side of the intersection was stopped. *Lindenmier*, 156 Ill. App. 3d at 91-92, 508 N.E.2d at 1212.

Hazekamp admitted that she knew she had a statutory duty to yield the right-of-way to oncoming traffic on Gregory Street. This admission is identical to that by the plaintiff in *Lindenmier*. We agree with the court's reasoning in *Lindenmier* and in *Ziemba* and conclude the City could not reasonably anticipate Hazekamp would disregard her acknowledged, statutory duty to yield the right-of-way to oncoming traffic.

In *Pyne v. Witmer* (1987), 159 Ill. App. 3d 254, 512 N.E.2d 993, *aff'd* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304, the court rejected plaintiff's argument that defendants breached their common law duty to maintain their property in such a condition that motorists approaching the intersection could see other approaching traffic by allowing a hedge to obstruct a driver's view of oncoming cross-traffic. The court noted plaintiff failed to cite any authority which stood for the proposition that a property owner had such a duty. The court held:

> "[I]n the absence of a statutory directive to the contrary, that there is no duty in Illinois on a landowner to remove foliage on his property so that motorists approaching an intersection can see other intersecting motorists. Considering the burden such a duty would impose on private property owners, we leave the imposition of such duty to the legislature." *Pyne*, 159 Ill. App. 3d at 262, 512 N.E.2d at 997.

This court recently reiterated that conclusion, holding:

> "[A] landowner owes no duty not to erect or to create an artificial condition at an intersection that obstructs an approaching motorist's view of cross-traffic. The imposition of such a duty would likely have wide-ranging and possibly adverse consequences. We believe that a balancing of the policy considerations in favor of and against the imposition of such a duty is better left to the legislative branch of our government." *Cross v. Moehring* (1989), 188 Ill. App. 3d 830, 833, 544 N.E.2d 1259, 1261.

In the instant case, the legislature has chosen to act. Section 11—1303(a)(2)(c) of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—1303(a)(2)(c)) provides that there shall

be no parking within 20 feet of a crosswalk at an intersection. Section 33—53(a)(6) of the Champaign City Code (City Code) is in accordance with this section of the Vehicle Code in prohibiting parking within 20 feet of a crosswalk at an intersection. Although the evidence was unclear as to whether there was a crosswalk at this intersection, this does not preclude the above sections from applying in this instance. An unmarked crosswalk may exist at an intersection where that portion of the street which corresponds to the statutory definition of a sidewalk is unimproved. (*Glendinning v. Formiller* (1973), 14 Ill. App. 3d 291, 302 N.E.2d 408 (abstract of opinion).) Section 1—113(a) of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 1—113(a)) states a crosswalk is "[t]hat part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs." Furthermore, section 11—1304(d) of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—1304(d)) allows the Department of Transportation to prohibit parking in other places where, in its opinion, it is dangerous to park or where parking would unduly interfere with the free flow of traffic.

The evidence established that the "no parking" sign itself was 30.7 feet from the intersection while the first car was parked 36 feet from the intersection. This demonstrates a legislative determination that prohibiting parking 30.7 feet from an intersection gives an approaching driver a sufficient sight distance in which to view the oncoming cross-traffic. Since the legislature has made a determination as to the distance "no parking zones" should be from an intersection, we are foreclosed from making our own determination.

In conclusion, we hold the City has fulfilled its duty to maintain its roads in a reasonably safe condition by placing a stop sign on the corner of Arbor and Gregory Streets. There is no dispute that the stop sign was unobstructed and that Hazekamp saw it and obeyed it. The legislature has made a determination as to what the adequate sight distance is at this intersection and we will not challenge that determination. Furthermore, we find this accident was not reasonably foreseeable to the City and that to find otherwise would be imposing a duty on the City to guard against the negligence of others.

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of the City of Champaign.

Affirmed.

LUND, P.J., and SPITZ, J., concur.