DEVRA WAGNER, Plenary Guardian of the Estate of Troy M. Wagner, a Disabled Person, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)   Nos. 1—91—3872, 1—91—3906 cons.

Opinion filed September 29, 1993.—Rehearing denied January 5, 1994.

Mark S. Grotefeld and Carol M. Douglas, both of Robins, Kaplan, Miller & Ciresi, of Chicago, and David W. McKenna and Corey L. Gordon, both of Robins, Kaplan, Miller & Ciresi, of Minneapolis, Minnesota, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joan Flynn, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Troy Wagner (plaintiff) was severely injured in an accident at an intersection in which his motorcycle collided with a pickup truck driven by Paul Roszkowski. Plaintiff's guardian filed suit against both

Roszkowski and the City of Chicago (City), but settled with Roszkowski. At trial, the jury found the City negligent, but also determined that plaintiff had been 50% at fault, and so reduced his damages accordingly to approximately $2,155,000.

On appeal, plaintiff contends that: (i) the trial court erred when it denied his motion for judgment notwithstanding the verdict as to his comparative fault; and (ii) abused its discretion when it refused to assess sanctions against defendant for a willful violation of discovery rules.

Also in this consolidated appeal, the City (i) challenges the trial court's denial of its motion for judgment notwithstanding the verdict and its earlier section 2—619 motion (Ill. Rev. Stat. 1979, ch. 110, par. 2—619) on the grounds that plaintiff's claim is barred under the Local Governmental & Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1979, ch. 85, par. 3—104(a)); (ii) alternatively, even if the City might be liable for its negligence, it owes no duty to a plaintiff who does not exercise ordinary care; and (iii) it is entitled to a remittitur of damages.

We affirm the trial court's determination.

On July 25, 1985, plaintiff's motorcycle collided with Roszkowski's pickup truck at the five-way intersection of Ashland Avenue, Rosehill Drive and Clark Street in Chicago. Roszkowski was traveling north on Clark when he turned left onto Rosehill and stopped before proceeding west through the Ashland-Rosehill intersection as he had done numerous times. Plaintiff was traveling south on Ashland when Roszkowski started to proceed through the intersection of Rosehill and Ashland. Roszkowski had traveled 10 feet when he collided with plaintiff's motorcycle. The impact caused the 19-year-old plaintiff severe and permanent brain damage, with no memory of the accident.

Roszkowski was the only witness to testify to the circumstances of the accident. He stated that as he was stopped at Ashland after turning left onto Rosehill from Clark, he looked to his right and observed plaintiff on his motorcycle at least one block away on Ashland. He testified that he thought plaintiff was going 38 to 40 miles per hour, "fast" compared to vehicles he was used to seeing in the area, where the speed limit is 30 miles per hour. He testified that he looked to the left and the traffic light facing north was red. The parties disagree as to whether the light he observed was for northbound Ashland traffic or for southbound Ashland traffic, but there was no confusion that he looked to his left and the exhibit showing the layout of the traffic signals clearly demonstrates that the light he observed was intended to regulate southbound Ashland traffic. Roszkowski looked left, then

right to see plaintiff, then left again, then pulled out into the intersection at approximately 3 to 5 miles per hour, when plaintiff collided with his truck, throwing plaintiff approximately 60 feet.

Plaintiff's traffic expert, Matthew Sielski, testified that the City should have had a "No left turn" sign on the left side of Clark Street, and that the Manual on Uniform Traffic Control Devices (Manual) requires that such signs be placed on both the right- and left-hand sides of the street. Sielski acknowledged that vehicles facing a straight green arrow may proceed through an intersection but may not turn left or right, and that northbound Clark Street has such a signal.

Sielski also testified that a motorist should never have to make a judgement call about whether or not to proceed, and that after Roszkowski made a left turn, there was no device governing westbound traffic and the absence of such a device contributed to the accident.

The map appended to this opinion demonstrates the complex nature of this intersection.

Kenneth Hodl, the City's acting head of the traffic signal section of the City's Bureau of Traffic Engineering, testified as to the placement and sequencing of traffic signals at the intersection. He stated that the signals have been unchanged since 1957, and that there is no signal regulating westbound Rosehill traffic, since Rosehill is one-way going east through the intersection. Northbound Clark traffic has a red, yellow and straight green arrow signal, while southbound Ashland has red, yellow and a solid green signal.

Hodl testified that a "One-way" sign governing northbound Ashland traffic was installed on the triangular traffic island just north of Rosehill in 1961. At the time of the accident, that sign was located on the center pole of three poles on that island. In 1972, a "No left turn" sign was installed on the east side of Clark to regulate northbound Clark traffic from making turns onto Rosehill going west. In 1987, a City employee was sent to check that sign, but there was no indication in the City's records whether it was in place. In 1990, that sign was found missing and was replaced. It was again discovered missing in 1991. There is no information as to whether there was a "No left turn" sign in place at the time of the accident in 1985.

Hodl testified that a second "No left turn" sign was unnecessary because there was a first sign on the east side of Clark Street in addition to the straight green arrow governing northbound Clark traffic. He opined that even if the sign was missing at the time of the accident, the green arrow was enough to warn drivers that left turns were not allowed, since the Manual states that no turns are permitted on a

straight arrow, and it was his opinion that no additional signage is required.

The jury found the City negligent and awarded plaintiff damages of $4,309,671, which was reduced by 50% after finding plaintiff was also at fault in causing his injuries, and the court later reduced by $53,000 the award for future medical care, bringing recoverable damages to $2,128,335.

We first address plaintiff's contention that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict on the issue of plaintiff's comparative fault. Plaintiff argues there is no evidence supporting any of the City's charges that plaintiff was negligent in: (1) failing to keep a proper lookout; (2) failing to sound his motorcycle horn; (3) traveling at an excessive rate of speed; and (4) failing to obey a red light.

A judgment notwithstanding the verdict is entered where all of the evidence, viewed in a light favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Alden Press, Inc. v. Block & Co.* (1988), 173 Ill. App. 3d 251, 527 N.E.2d 489.) Here, we must determine whether the evidence, viewed in a light most favorable to the City, overwhelmingly demonstrates that plaintiff's negligence was not a proximate cause of the accident.

Since Roszkowski was the only witness to testify to the accident and defendant did not call an accident reconstructionist, any factual determinations the jury made regarding the accident would have come from Roszkowski's testimony and the factual circumstances of the accident.

The City contends that plaintiff ran a red light and his failure to stop was the proximate cause of the accident. The parties disagree on this issue, both drawing different inferences from Roszkowski's testimony regarding the traffic signals he observed while facing westbound on Rosehill at Ashland.

This critical witness, in his pickup truck facing west, first stated he saw a red light for "southbound traffic" and after a suggestion from counsel, corrected his testimony to "northbound traffic." He also noted that the light he observed was to his "left," which would have been the signal for southbound Ashland traffic. Although somewhat inexacting, the jury may reasonably conclude that a witness might be confused as to "north" or "south," but hardly as to "right" or "left."

Plaintiff argues that the evidence is clear that he had a green light when he travelled south on Ashland prior to the accident because (1)

Roszkowski stated that the light for northbound Ashland was red without a green left-turn arrow, and that he saw two cars waiting to turn left from Ashland onto Rosehill; and (2) his expert testified that the only time the signal for southbound Ashland is red is when northbound Ashland has a green arrow to turn left onto Rosehill. Plaintiff implies that the two cars waiting to turn left onto Rosehill would not have been stopped at the light if southbound Ashland traffic had a red light.

The City argues, however, that the sequencing of the lights means plaintiff might have had a red or yellow light by the time he reached the intersection.

■ The jury could infer from Roszkowski's testimony that plaintiff may have run the red light since he stated that he saw a red light to his left, which would be the light governing southbound Ashland traffic and plaintiff. Given that inference, the jury would be justified in believing that the left-turn arrow for northbound Ashland turning onto Rosehill had just activated, and that the two cars waiting to turn had not yet moved. Thus, the jury could have interpreted the evidence to find plaintiff negligently failed to stop at a red or yellow light, which was a proximate cause of the accident.

The City also contends that plaintiff was travelling at an excessive speed and that was a proximate cause of the accident. Roszkowski stated that when he observed plaintiff one block away, he estimated plaintiff's speed to be approximately 38 to 40 miles per hour. Because Roszkowski did not look at plaintiff again before the accident, he had no way of estimating plaintiff's speed at the time of the accident.

Driving in excess of the speed limit is sufficient evidence of negligence, and circumstantial evidence is sufficient to support a finding of excessive speed. *Pace v. McClow* (1983), 119 Ill. App. 3d 419, 424-25, 458 N.E.2d 4.

While Roszkowski's testimony is not dispositive of plaintiff's speed at the time of the accident, Roszkowski's occupation is an ambulance driver and the jury could reasonably give weight to his approximation of plaintiff's speed since it is part of his job to drive faster than the speed limit. The jury could determine that excessive speed slowed plaintiff's reaction time and thus was a proximate cause of the accident.

As to whether plaintiff kept a proper lookout, Roszkowski testified that his only view of plaintiff was when plaintiff was one block away from the intersection. Plaintiff argues that Roszkowski pulled out quickly in front of plaintiff, striking him, thus plaintiff could not possibly have translated a lookout into successful evasive action.

The City argues that plaintiff could have seen Roszkowski from a block away, but since he hit the side of Roszkowski's truck, somehow there is an indication that plaintiff was not looking at Roszkowski when he entered the intersection, and thus failed to keep a proper lookout.

Whether a driver failed to keep a proper lookout may be established by circumstantial evidence, viewed most favorably toward the driver, which allows a reasonable inference of such failure. *Pace*, 119 Ill. App. 3d at 426-27.

In *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 468, 263 N.E.2d 593, the court reversed the jury's finding that plaintiff was contributorily negligent when defendant pulled in front of plaintiff where plaintiff had the right of way and defendant was required to stop. Further, in *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 140, 398 N.E.2d 360, where plaintiff had only one or two seconds to react when defendant swerved into his lane, the court stated that a plaintiff cannot be held to an unreasonable standard of care when determining whether plaintiff kept a proper lookout. The court noted that a plaintiff "cannot be reasonably expected to react as a professional automobile driver and instantaneously redirect his car." *Lesperance*, 79 Ill. App. 3d at 141.

Here, photos of Roszkowski's pickup truck in the record indicate that the greatest impact was on the front of the truck, where the grill, bumper and all lights were smashed and broken on the left side, and the metal was smashed and twisted. There is some damage on the left front corner of the truck, although it appears that the corner was hit primarily from the front and pushed inward. There are a few dents on the left front side panel and on the hood of the truck, but they appear to be a result of buckling due to the impact from the front.

On this sketchy testimony, we cannot agree with the City's argument that plaintiff failed to keep a proper lookout because he hit the side of the truck. Nor do we agree with the City's contention that because Roszkowski observed plaintiff from one block away, there was sufficient circumstantial evidence that plaintiff saw Roszkowski but failed to keep a proper lookout. Further, the City offered no evidence as to what action plaintiff might have taken to avoid the accident.

The City next argues that plaintiff contributed to proximate cause by failing to sound his motorcycle horn. Roszkowski testified that neither he nor plaintiff sounded their respective horns.

We cannot say that plaintiff was negligent in failing to sound his horn. The evidence does not demonstrate that plaintiff saw Roszkowski in time to sound his horn, since it does not appear that plaintiff even had time to turn his wheel to avoid the accident. It is

unlikely that plaintiff was aware of Roszkowski's approach from the side, especially since Roszkowski entered the intersection at an improper and unexpected place, and thus plaintiff was not negligent in failing to sound his horn.

We cannot say that the evidence, when viewed in a light most favorable to the City, so overwhelmingly favors plaintiff that no contrary verdict based upon that evidence could ever stand. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382, 609 N.E.2d 290.) Here there is a sufficient basis of evidence from which the jury could find that plaintiff was comparatively negligent: Roszkowski's testimony regarding the traffic lights that he viewed, and Roszkowski's testimony that plaintiff was traveling in excess of the speed limit.

Plaintiff next contends the trial court erred in refusing to strike the City's answer and affirmative defenses as a sanction for willful violation of discovery rules and should have granted plaintiff's request for sanctions pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)).

Plaintiff had served a production request more than three years prior to trial seeking all information relating to traffic regulation at the intersection at issue, and received traffic signal plans. It was only at the deposition of the City's chief traffic engineer, Kenneth Hodl, on the eve of trial, that plaintiff discovered Hodl's file contained other documents which plaintiff considered highly significant to the issue of the City's liability and which were responsive to plaintiff's request three years earlier.

Among the documents were (1) a memorandum stating "This complex intersection is hampered by northbound vehicles on Clark Street turning left, causing a definite traffic conflict"; (2) documents calling for the installation of a "No left turn" sign as early as 1972; and (3) work orders indicating that the "No left turn" sign had been replaced in 1990.

Plaintiff claims the City willfully withheld these documents which related specifically to the intersection at issue and which had a substantial impact on the issue of defendant's liability. Plaintiff contends that these documents demonstrate the City's long-standing recognition that left turns from northbound Clark onto Rosehill created traffic problems and that it had undertaken efforts to prohibit such turns. Plaintiff argues that the withholding of these documents caused him to misfocus his litigation efforts for three years on the issue of whether the City should have prevented left hand turns onto Rosehill from Clark rather than allowing him that time to focus on the newly re-

vealed issue of whether defendant's decision to prevent turns had been negligently implemented.

Rule 219(c) provides:

"If a party *** unreasonably refuses to comply with any [discovery] provision *** or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

\* \* \*

(vi) that any portion of his pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue." 134 Ill. 2d R. 219(c).

A party's noncompliance is unreasonable and sanctionable if it is characterized by a deliberate and pronounced disregard for the discovery rules and the court. (*Klairmont v. Elmhurst Radiologists* (1990), 200 Ill. App. 3d 638, 644, 558 N.E.2d 328; *Mueller v. Insurance Benefit Administrators, Inc.* (1988), 175 Ill. App. 3d 587, 598, 529 N.E.2d 1126.) The trial court is granted substantial discretion in ruling on discovery sanctions, and its ruling will be overturned only upon a showing that it abused that discretion. *Dyduch v. Crystal Green Corp.* (1991), 221 Ill. App. 3d 474, 480, 582 N.E.2d 302.

■ In this case, we find that the trial court did not abuse its discretion in denying plaintiff's motion for sanctions since the record supports the City's contention that there was no willfulness by the City when it failed to produce those documents.

The City produced all documents relating to traffic control signals at the intersection, but inadvertently neglected to include the new documents relating to traffic signs at the intersection, which were maintained in a "projects" file separate from those pertaining to traffic signals.

When the City's attorney, who is blind, received plaintiff's production request, it was apparently passed on to a paralegal in the City's Bureau of Traffic Engineering to research, and only the information relating to signals was obtained, since the information on signs was in the separate "projects" file. The attorney for the City who handled the request was no longer employed by the City when the error was discovered and when contacted could not recall the specifics of the document production. However, the City stated that the oversight likely occurred because plaintiff's complaint at that time focused on an alleged "dangerous sequencing" of traffic lights at the intersection.

Thus we find the trial court did not abuse its discretion, and we further find the plaintiff was not prejudiced by the late information:

there was an exhaustive hearing on the matter, covering almost 450 pages of the record; there is no evidence that plaintiff requested a continuance to conduct further discovery on the new evidence; and we cannot say that a different basis for finding the City negligent could bear on whether the jury found plaintiff's actions contributed to his injuries.

We next address defendant's contention that the trial court erred when it allowed plaintiff to argue as one of its theories that the City's negligent failure to install traffic control devices controlling westbound Rosehill or provide warnings of a dangerous condition was a proximate cause of plaintiff's injuries. The City contends that it is immune from liability for an initial failure to provide such devices under both common law and under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1979, ch. 85, par. 3—104(a)).

We recognize that the Tort Immunity Act creates no new duties, but limits duties to those existing at common law (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 412-13, 583 N.E.2d 538; *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6, 570 N.E.2d 315) and that a municipality has a general duty to maintain its property in a reasonably safe condition, which duty encompasses a duty to make public improvements, once undertaken, in a reasonably safe manner. Ill. Rev. Stat. 1985, ch. 85, par. 3—102; *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 1078, 560 N.E.2d 974.

The accident in question occurred in July 1985 and the City's immunity is determined by the statutes then in full force and effect. While it is an oxymoron to suggest that the plaintiff was in any way fortunate, it should be pointed out that section 3—104 of the Tort Immunity Act was significantly amended in 1986 to extend the city's immunity to situations in which the municipality was without notice that a particular device was unsafe and refused to impose a duty on municipalities to provide a particular traffic control device in that situation.

While we affirm the trial court, we note that our decision would be to the contrary had this unfortunate accident occurred subsequent to the amendment of the section by the General Assembly in 1986.

The statute in effect in 1985, which applies to the case at bar, provides:

"(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.

(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to *warn* of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 95, par. 3—104.

Plaintiff's fifth amended complaint alleged:

"6. At said time and place there existed neither traffic control devices restricting or controlling traffic attempting to head westbound on Rosehill Road at its intersection with Ashland Avenue, nor devices warning traffic attempting to travel southbound on Ashland Avenue that westbound Rosehill Road traffic had no traffic control devices which would restrict or control its movement across the path of southbound traffic on Ashland, nor adequate devices to restrict or *advise* traffic attempting or intending to move from Clark Street to westbound Rosehill Road." (Emphasis added.)

Similarly, the court instructed the jury in its issues instruction that the defendant was negligent because "as of July 24, 1985, there were no traffic control devices that restricted or controlled traffic heading westbound on Rosehill Road at its intersection with Ashland Avenue."

Apparently, no objection was made by the City at the time of the tendering of this issue's instruction so that any infirmities in the instruction had been waived. (See *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 197, 285 N.E.2d 217.) Moreover, the city's post-trial motion was without specificity and merely stated "the court improperly instructed the jury." Such a broad contention does not conform to the requirement of Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)), which requires specificity and clarity before such alleged error may be considered on appeal.

As to the City's potential liability, we believe that *West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104, is instructive. Although *West* was decided under the post-1986 version of section 3—104, it thoughtfully considers the pre-amended statute and states "Thus, under subsection (b) of the predecessor version of 3—104, it was possible to hold a municipality liable for the failure to provide a traffic warning sign or device if such was 'necessary to warn of a condition which endangered the safe movement of traffic.'" (Emphasis omitted.) *West*, 147 Ill. 2d at 8.

The *West* court continues by noting that the legislature's amendment of the section intended to enlarge the scope of immunity provided to the municipality even where the municipality's action might endanger the safe movement of traffic. *West*, 147 Ill. 2d at 8.

The City contends that plaintiff's references to a failure to install traffic control devices clearly falls within the former section 3—104(a), which provides that a municipality is immune from liability for the failure to initially provide such devices. See *West*, 147 Ill. 2d at 3-12.

Section 3—104(b), however, addresses the City's failure to warn of an endangering condition, and plaintiff's fifth amended complaint alleges that the defendant failed to provide a means to "advise" of a condition not readily apparent to a user.

We find plaintiff's complaint well pled. Webster's Third New International Dictionary states that "advise" may mean "warn," and we find it clear from the face of plaintiff's complaint that "advise" meant "warn." See Webster's Third New International Dictionary 32 (1986).

Further, there has been ample testimony by plaintiff's expert that the restriction on the left turn from Clark did not meet appropriate standards and that the creation of an intersection where only three directions are controlled leaves motorists in the fourth direction without a warning that the other three directions are controlled while theirs is not.

While the City contends that *West* rejects this "asymmetry" argument, the supreme court in that case grounded its determination on the amended version of the statute, which, as we have discussed, is more strict than the pre-amended version and which does not apply in the present case. *West*, 147 Ill. 2d at 6-12.

Moreover, a City memorandum evidences the City's long-standing knowledge of the dangers posed to motorists making left turns at the intersection.

To be sure, there is contrary testimony as to the issues of proximate cause; however, the jury has properly performed its function in considering the expert opinions advanced and in determining the credibility to be accorded them. (*In re Glenville* (1990), 139 Ill. 2d 242, 251, 565 N.E.2d 623.) The parties argue whether section 3—104(a), which provides immunity for failure to initially provide a traffic device, or section 3—102(a), which establishes a duty to maintain the intersection, also imposes liability upon the defendant. However, we need not decide that debate since we have determined that the pre-amended version of section 3—104(b) was properly pled and evidence presented that adequately supports that theory of liability. *Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 174, 531 N.E.2d

9; *Cohn v. Checker Motors Corp.* (1992), 233 Ill. App. 3d 839, 843, 599 N.E.2d 1112; *Rognant v. Palacios* (1991), 224 Ill. App. 3d 418, 420, 586 N.E.2d 686.

The City next contends that it is entitled to judgment notwithstanding the verdict because under either section 3—102(a) or section 3—104(b) the City owes no duty to a plaintiff who fails to exercise ordinary care for his own safety.

The City suggests, therefore, that the language of the statute requires that the standards of contributory negligence rather than comparative negligence be imposed upon the plaintiff. The basis for the City's argument is that section 3—104(b) provides that liability will be imposed upon a public entity when it fails to warn of a dangerous condition "which would not be reasonably apparent to or anticipated by *a person in the exercise of due care.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 85, par. 3—104(b).

This issue was first considered in *Palladini v. City of East Peoria* (1985), 134 Ill. App. 3d 345, 480 N.E.2d 530, where the language of the statute was construed to be consistent with the comparative negligence doctrine first set forth in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.

In *Palladini*, the court determined that the principal concern of the legislature in enacting the Tort Immunity Act in 1965 was to impose upon a public entity the same standards as any other common law defendant. The *Palladini* court, noting that this meant contributory negligence as a defense at the time of enactment, observed:

"The advent of comparative negligence alters only the results, not the standards. A municipality has a duty to maintain its property in a reasonably safe condition. Persons using the property still must use ordinary care. When those duties are simultaneously breached, however, it is the effect which is different due to the changes dictated in *Alvis*. Thus, accepting the thesis that the act seeks to apply common law standards to municipalities, the purposes of the statute are served by applying comparative negligence." *Palladini*, 134 Ill. App. 3d at 348.

In 1991, however, a First District Appellate Court declined to follow *Palladini* and held that the General Assembly had defined the nature and extent of the municipality's liability and that the Tort Immunity Act required a strict adherence to the language employed by the legislature. (*Thompson v. County of Cook* (1991), 222 Ill. App. 3d 459, 584 N.E.2d 170.) Hence, in *Thompson*, plaintiff's decedent was found 23% negligent in causing his own injuries where both plaintiff's decedent and the driver of the car in which plaintiff's decedent was a

passenger were intoxicated when the car ran off the road at a curve, and the court found there was no duty of care owed to him by the county because he did not fall "within the class of motorists by whom defendant's highways were intended to be used," (*i.e.*, persons in the exercise of ordinary care).

At the appellate level, the *Thompson* court relied upon *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116. In *Curtis*, plaintiff was a passenger in an automobile in which the driver was using the highway to "speed-clock" (a form of drag racing in which a driver attempts to reach the greatest possible speed in a quarter mile). The *Thompson* court, we believe, was overly broad in its reading of *Curtis*. *Curtis* states that there is a legislative intent in provisions of the Tort Immunity Act to extend a duty of care only to those persons by whom the local government intended the property to be used. A narrower, and we believe, more cogent, interpretation of the statute would be that the public entity could not have intended the property to be used to speed-clock automobiles.

Had the plaintiff used the roadway in a manner in which it was reasonably intended, we believe *Curtis* would have had a different result.

This court, therefore, is faced with two opposing views on the issue of comparative negligence in this context—one from the third district and the other from the first district. Were that the end of the matter, we would be inclined to follow a first district court. However, *Thompson* was appealed to the Illinois Supreme Court, where the court affirmed the judgment of the appellate court but predicated its opinion solely upon the fact that the actions of the driver of the car in *Thompson*, in driving while intoxicated, speeding, eluding police, and disregarding traffic signs, was the sole proximate cause of the accident and thus superseded any causal relationship between the alleged negligence of the county and the injury. *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 609 N.E.2d 290.

The supreme court specifically noted that it was not necessary to consider any of the issues dealing with the application of the Tort Immunity Act's section 3—102, nor was it required to consider whether *Curtis* was correctly decided. *Thompson*, 154 Ill. 2d at 384.

While we are not required to read between the lines of a supreme court decision or second-guess its determination, we do not live in a vacuum. It would seem that the supreme court could have easily affirmed the appellate court on the issue of duty and imposed upon plaintiffs the burden of showing themselves free of contributory fault.

The supreme court chose to turn away from that issue and we believe that *Palladini* is and ought to be the law in Illinois.

Although we have addressed the substantive issue of comparative negligence, plaintiff has asserted that the defendant offered the jury instruction on comparative fault and that it would be improper for us to allow the City to raise the issue for the first time on appeal. Moreover, no specific reference was made to this issue in the City's post-trial motion and that would seem to be the very minimum necessary to properly preserve an issue for appeal. *Thacker v. U N R Industries, Inc.* (1992), 151 Ill. 2d 343, 353, 603 N.E.2d 449; *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348, 415 N.E.2d 337; *Ryan v. Katz* (1992), 234 Ill. App. 3d 536, 542, 600 N.E.2d 1206.

Again, the defendant does not meet the requirements of Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)), which demands specificity and clarity of grounds for relief in a post-trial motion. *Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347, 549 N.E.2d 1262.

Despite these observations, we would have been hard pressed to deny the City's right to assert this argument had the supreme court's *Thompson* opinion been predicated upon the absence of comparative negligence in this genre of cases.

The City also argues that it was entitled to judgment because Roszkowski's acts of making an illegal left turn and failing to yield to plaintiff were independent proximate causes of plaintiff's injury breaking any causal connection between the City's conduct and plaintiff's injury.

While the City admits on page 60 of its reply brief that the record provides sufficient evidence to support the jury's finding that the intersection was not reasonably safe, it contends that Roszkowski's conduct alone was the proximate cause of plaintiff's injuries, and not the City's design of the intersection, its failure to install warning devices, or its maintenance of the intersection.

A plaintiff must show that the defendant's conduct produced the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. (*Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361, 493 N.E.2d 372.) The defendant's negligence must do more than furnish a condition by which the injury is made possible and the condition causes the injury by the subsequent independent act of a third person. *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 1035, 596 N.E.2d 128; *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 1078, 537 N.E.2d 1146.

However, there may be more than one proximate cause of an injury (*Quintana*, 230 Ill. App. 3d at 1034), and a party guilty of negligence cannot avoid responsibility merely because another party is also guilty of negligence contributing to the same injury, even though the negligence would not have occurred but for the negligence of the other party. *Turner v. Roesner* (1990), 193 Ill. App. 3d 482, 490, 549 N.E.2d 1287.

An intervening act will not supersede a defendant's negligence and relieve him of liability where the defendant could reasonably foresee the intervening act. *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15, 413 N.E.2d 1242; *Quintana*, 230 Ill. App. 3d at 1034.

■ We find the record demonstrates that the jury had sufficient evidence which established a factual link between the collision and the alleged negligence of the City to support its determination that the City's actions or omissions were a proximate cause of plaintiff's injuries:

> (1) the City's own report regarding the intersection admitted "This complex intersection is hampered by northbound vehicles on Clark Street turning left, causing a definite traffic conflict";

> (2) the City attempted to correct the problem by placing one "No left turn" sign on the east side of Clark, contrary to the Manual, which calls for a different placement of the sign and two signs rather than one;

> (3) when Roszkowski testified that he did not recall seeing a "No left turn" sign, and the City admitted that it had to replace a missing sign in 1990, these may be taken as some evidence that there the "No left turn" sign was absent at the time of the accident; and

> (4) a "One-way" sign for westbound Rosehill placed upon the center of three poles on the island to the left of Clark at the least may have allowed a momentary belief to motorists northbound on Clark that a left turn was allowed, perhaps more so when construed with evidence that the "No left turn" sign was missing on the day of the accident.

The City was aware that left turns were being made at the intersection and undertook certain efforts to discourage such action. The jury could have determined from the evidence that the City's negligent failure to effectively discourage and route motorists desiring and attempting to turn left onto Rosehill from Clark was a proximate cause of the collision.

Defendant argues that illegal conduct is unforeseeable as a matter of law because defendants should not have to construct their affairs so as to protect against the risk that another's illegal conduct will intervene and cause injury to a plaintiff, citing *Ziemba v. Mierzwa* (1991),

142 Ill. 2d 42, 52, 566 N.E.2d 1365, *Manning v. Hazekamp* (1991), 211 Ill. App. 3d 119, 126, 569 N.E.2d 1168, and *Lindenmier v. Rockford* (1987), 156 Ill. App. 3d 76, 91, 508 N.E.2d 1201.

The City contends that *Lindenmier* is directly analogous to the case at bar. There, plaintiff made a left turn on a green light when she suspected that the left-turn arrow was inoperative, and a collision occurred which injured her passengers. Plaintiff filed suit against the municipality and several other defendants. Plaintiff admitted that she knew she was required to yield to oncoming traffic when there is a single green circular traffic light, but she instead turned in front of a car and collided with it, believing she could clear the intersection before the other car reached that point. Plaintiff testified that she thought the light for oncoming traffic was red because she saw a second oncoming car stopped at the intersection.

The court stated that the municipality's conduct was not the proximate cause of the accident since plaintiff admitted that she knew she must yield when there is no green arrow but did not, and that "[i]t was not reasonably foreseeable as a matter of law that [plaintiff] would believe a protected left turn could be made on a full green signal in the absence of green turn arrows or other such indicia of traffic regulation." *Lindenmier*, 156 Ill. App. 3d at 91.

The *Lindenmier* court stated that the test to find the legal cause of the injury is determining whether the first wrongdoer might reasonably have anticipated the intervening cause as a natural and probable result of its own wrongdoing. (*Lindenmier*, 156 Ill. App. 3d at 91.) The court opined that it did not believe that the municipality could have reasonably anticipated that plaintiff would disregard the "statutorily prescribed response" of the circular green light requiring her to yield in favor of the ambiguous meaning of a single stopped car on the opposite side of the intersection when she decided to turn left in front of another oncoming car.

We believe that if a jury applied the *Lindenmier* test to the case at bar, it could reasonably have found the City negligent in failing to provide a device necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care. This determination is based upon the City's own written reports which found motorists making unauthorized turns from Clark onto Rosehill, and the evidence that the "No left turn" sign was missing in 1990 and could have been missing at the time of the accident.

Further, plaintiff in this case does not allege negligence in the City's attendance to a malfunction in traffic signals provided, but rather ar-

gues that other aspects of the intersection—the City's warning of the dangerous condition there—were negligently implemented, given the City's admitted knowledge of the dangers caused by motorists turning onto Rosehill from Clark Street.

Considering the evidence against the City, we do not find Roszkowski's actions to be a superseding proximate cause of plaintiff's injuries.

We distinguish those cases which the City cites, *Ziemba* and *Manning*, since there the courts found the accidents were not reasonably foreseeable.

In *Ziemba*, plaintiff was injured when his bicycle collided with a truck that had exited defendant's driveway, the driveway not being visible from the road due to foliage growth on defendant's property. The court found that defendant could not reasonably have foreseen that the driver would exit the driveway without first ascertaining whether there was any oncoming traffic, and defendant had no duty to maintain his property so that plaintiff could see the driveway from the adjacent roadway. (*Ziemba*, 142 Ill. 2d at 52.) It was not the growth of foliage that was dangerous, but the addition of the truck exiting that made the condition dangerous. *Ziemba*, 142 Ill. 2d at 50.

In *Manning*, plaintiff was injured when the motorcycle upon which she was a passenger collided with a car attempting to turn left in front of plaintiff's motorcycle from a side street. Plaintiff filed suit against the municipality, charging that it failed to maintain adequate sight distances at the intersection for drivers on the side street since the municipality allowed cars on the main street to park to close to the intersection, thus blocking the view of cars approaching on the main thoroughfare. The court found that the cars parked upon the main street were not dangerous by themselves but only became dangerous when the driver of the car failed to yield to the motorcycle, and that the municipality could not reasonably have foreseen that the driver of the car would fail to yield the right-of-way at the main street to vehicles that were not required to stop at the intersection. *Manning*, 211 Ill. App. 3d at 126.

As the *Manning* court noted, the court's finding turns on whether the type of accident which occurred was reasonably foreseeable. (*Manning*, 211 Ill. App. 3d at 127.) The evidence in the case before us adequately demonstrates that the City was well aware of the dangers of the intersection and of drivers turning left from Clark onto Rosehill; thus, the situation leading up to the accident was reasonably foreseeable.

Finally, the City argues that a remittitur of damages is required because the jury failed to reduce plaintiff's $2 million award for reasonable expenses for future care to its present value of $1 million.

The City disputes plaintiff's argument that the award of $2 million for the "present cash value of reasonable expenses of necessary help" should include housing costs.

Damages are peculiarly an issue of fact for a jury to determine and are subject to reversal when excessive, that is, a reviewing court will not disturb a jury's award of damages unless they were obviously a result of passion or prejudice; an award is not excessive unless it falls outside the necessary limits of fair and reasonable compensation or it shocks the judicial conscience. (*Riley v. Koneru* (1992), 228 Ill. App. 3d 883, 888, 593 N.E.2d 788; *Harding v. City of Highland Park* (1992), 228 Ill. App. 3d 561, 572, 591 N.E.2d 952; *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 122, 576 N.E.2d 918; *Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 1055, 532 N.E.2d 1091; *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 468, 508 N.E.2d 426.) A jury's award will not be subject to remittitur where it falls within the "flexible range" of conclusions which can be reasonably supported by the facts. *Riley*, 228 Ill. App. 3d at 888; *Lewis*, 217 Ill. App. 3d at 123.

The facts in this case include testimony by plaintiff's physician that plaintiff requires 24-hour companion care. One estimate of this was $120 per day, or $43,800 per year. Plaintiff's life expectancy was speculated to be 48.58 years at the time of trial, which would amount to $2,127,804 over plaintiff's lifetime.

Reviewing court judges are in a poor position relative to the jury in evaluating and weighing the evidence as to damages. (*Loitz*, 177 Ill. App. 3d at 1055.) The instruction clearly states "present cash value of reasonable expenses of necessary help" and there is no evidence that demonstrates the jury was confused by the instructions or the award. It is up to the jury to determine the proper weight to give the damages evidence and we find that the jury's award is not outside the flexible range of conclusions which can reasonably be supported by the facts.

For all of the foregoing reasons, we affirm the trial court's determination.

Affirmed.

RIZZI and CERDA, JJ., concur.