2022 IL App (1st) 0696-U
No. 1-21-0696

FIRST DIVISION
August 1, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MEDIHA COSOVIC, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Law Division |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19 L 004327 |
| | ) | |
| VILLAGE OF SKOKIE, a municipal corporation, | ) | The Honorable |
| | ) | John H. Ehrlich, |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order granting of the defendant's motion to dismiss the plaintiff's First Amended Complaint with prejudice pursuant to 735 ILCS 5/2-619.1. Plaintiff failed to sufficiently plead that Defendant, a public entity, allowed for a dangerous condition to exist at an intersection of the public roadways, and this dangerous condition was the proximate cause of her vehicle accident.

¶ 2    Plaintiff-Appellant Mediha Cosovic ("Cosovic") claims that Defendant-Appellee Village of Skokie ("Skokie") breached its duty to exercise ordinary care in maintaining its property in a reasonably safe condition by allowing trees and other obstructions to restrict driver visibility at an intersection, and that this obstruction caused a vehicular collision involving Cosovic and another

driver. Skokie filed a combined motion to dismiss pursuant to 735 ILCS 5/2-619.1, arguing that Skokie satisfied its duty to maintain the intersection in a reasonably safe condition, and furthermore did not breach any duty established by its municipal code. The circuit court granted the motion to dismiss, and Cosovic now appeals.

¶ 3                                          BACKGROUND

¶ 4      The underlying matter arises from a lawsuit filed by Mediha Cosovic against the Village of Skokie for damages sustained in a motor vehicle accident that took place in Skokie and involved Cosovic and another driver, not a party to the suit. Cosovic claimed that as she approached the intersection where the accident occurred, her view was obstructed by trees and branches that Skokie negligently failed to remove from the intersection. According to her complaint, on September 21, 2018, Cosovic approached the intersection of Searle Parkway and Elmwood Street in Skokie ("the intersection") in her vehicle, coming to a full stop at a stop sign and looking left and right before proceeding into the intersection. Cross-traffic had the right of way, and did not have stop signs at the intersection. In the intersection, another driver struck the driver's side of her vehicle, causing her various injuries. Cosovic claimed that both she and the other driver exercised ordinary care and obeyed all traffic laws, and the accident was proximately caused by Skokie's failure to "properly maintain trees and other objects surrounding traffic signs to insure [*sic*] visibility at or near any traffic flows signs/signals [*sic*]." In addition to the trees or other foliage allegedly obscuring her view, Cosovic stated that there were two parked cars, a pole owned and maintained by a utility company, and a cautionary traffic blockade at the intersection.

¶ 5      Cosovic filed her original complaint on April 23, 2019, and a first amended complaint on November 7, 2019. She alleged that Skokie had notice of at least seven prior accidents at that intersection between January 1, 2013 and the date of the accident, September 21, 2018, which gave

rise to a duty of care to maintain village property in a reasonably safe condition. She claimed in her first amended complaint ("Amended Complaint") that Skokie demonstrated a willful and malicious disregard for safety through its failure to: (1) properly remedy an unsafe condition; (2) supervise and inspect the intersection; maintain the intersection in a safe condition; (3) warn the public of the unsafe conditions; (4) maintain upkeep of areas surrounding traffic control signs and other devises meant to prevent injury in violation of 745 ILCS 10/3-102 and Sections 90-42 and 90-43 of the Municipal Code of the Village of Skokie; and (5) carelessly and negligently permitted trees to obstruct the view of drivers so as to create a dangerous condition likely to cause injury, in violation of the same state and municipal laws.

¶ 6     Skokie answered by filing a motion to dismiss the Amended Complaint pursuant to 735 ILCS 5/2-619.1 on January 11, 2021, providing various arguments why Cosovic had not and could not a viable claim. Pursuant to Section 615, Skokie claimed that the village satisfied its duty to maintain its streets in a reasonably safe condition by placing a stop sign at the intersection. Cosovic stated in her complaint that there was a stop sign, and did not plead that anything obscured its visibility or prevented her from coming to a stop at the sign. Therefore the cause of her accident was her own negligence in failing to yield right-of-way. Skokie's argument pursuant to Section 619(a)(9) begins with the position that Section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act ("Act") did not impose a duty on public entities to remove obstructions caused by trees, shrubbery, or foliage from their street intersections. Skokie further argued that Sections 90-42 and 90-43 of the Municipal Code of the Village of Skokie ("Municipal Code") did not provide a basis for Skokie's breach of its duty to maintain the intersection clear of obstructions because such a duty only applied in the absence of any traffic

control devices. Skokie pointed to the affidavit of Elizabeth Zimmerman[1] ("Zimmerman Affidavit") and an attached photo of the intersection at the time of the accident, showing no trees or other obstructions, in arguing that there were no trees, shrubs, or bushes obstructing any part of the stop sign, and therefore there was nothing for Skokie to maintain under the Municipal Code provisions. Skokie again noted that Cosovic herself pled that she came to a full stop at the stop sign and never claimed that it was obstructed from her view.

¶ 7 Cosovic responded that Skokie's argument relied on *Kirschbaum v. Village of Homer Glen*, 365 Ill.App.3d 486 (3d Dist. 2006), which was distinguishable because: (1) both parties to the vehicle collision in that case had stop signs; (2) the intersection in *Kirschbaum* was found not to have trees and bushes growing into it; (3) the *Kirschbaum* court held that the non-plaintiff driver's negligence in failing to stop at a stop sign broke the causal connection needed to establish that the defendant municipality's failure to maintain the intersection proximately caused the accident; and (4) the plaintiff in *Kirschbaum* didn't claim that the municipality violated its own ordinances. Cosovic pled that the intersection at issue was obstructed by trees, that the other driver did not have a stop sign at the intersection, and that the other driver was not negligent and did not violate any traffic laws. She further argued that *Kirschbaum* stood for the proposition that municipalities will be held liable for the negligent performance of ministerial acts, which included the duty to remove encroachments impeding traffic.

¶ 8 Cosovic instead compared the present matter to *First National Bank in DeKalb v. City of Aurora*, in which the defendant city was found liable for permitting a tree to obstruct the view of drivers, and the court held that "once a governmental unit 'adopts a plan in the making of public

---

[1] Zimmerman was Village Forester with the Skokie Public Works Department at the time of the accident, and was responsible for overseeing matters involving trees on Skokie's parkways, including overseeing tree pruning, tree removals, any tree treatment, and tree planting.

improvements,' it owes a duty to a plaintiff to maintain those improvements." 71 Ill.2d 1, 11 (1978). The court also held that the municipality's alleged violation of its own ordinances was *prima facie* evidence of negligence sufficient for the plaintiff to maintain a cause of action. Cosovic further argued that she never pled that the stop sign was clearly visible, and that according to the testimony of Elizabeth Zimmerman, the photos of the intersection that Skokie relied upon were taken at least a month after the accident, and the trees would have lost leaves longer into autumn or the beginning of winter. She also responded to the Zimmerman Affidavit, claiming that Zimmerman testified that she could not recall inspecting the intersection prior to the fall of 2019, a year after the accident, and she could not claim to authenticate the photos of the intersection that were taken in 2018.

¶ 9    Regarding the photos, Skokie replied that Cosovic never established that the trees were on public property, and Zimmerman testified that Skokie did not trim or remove trees on private property. Skokie further stated that Zimmerman had properly laid a foundation for her ability to rely on the photos taken approximately a year after the accident, as she had testified that she checked village records to confirm that no trees had been pruned or removed from the intersection between the date of the accident and the date of the photos. Next, Skokie distinguished the present matter from *Aurora* by noting that the intersection in *Aurora* was not controlled by stop signs, and the local ordinance in *Aurora* mandated that the city remove any encroachment upon a street, whereas the ordinances cited by Cosovic only made Skokie responsible for maintaining parkway trees, rather than mandating their removal or pruning if they obstructed road visibility. Skokie concluded by arguing that Cosovic never pled that the seven prior accidents at the intersection since 2013, which she claimed put Skokie on notice of the dangerous condition, had anything to do with trees obstructing driver visibility.

¶ 10     On May 19, 2021, the circuit court ruled in favor of Skokie, granting the motion to dismiss with prejudice. The court cited to several cases standing for the proposition that private landowners and municipalities owe no duty to prevent an obstructed view of cross-traffic, including situations regarding bushes, trees, parking spots, and signs. The court also explained that the Tort Immunity Act, 745 ILCS 10/ 1-101 *et seq.*, requires courts to refer to the common law to determine the duties of a local government entity, and if a certain duty does not exist at common law, there is no cause of action for an alleged breach of that duty. The court next stated that Skokie's municipal ordinances did not establish a duty of care that it owed to Cosovic under these circumstances. This was based on the court's finding that, according to Cosovic's own affidavit, she was able to see and stop at the stop sign and then see past it as she continued into the intersection; at some point, her line of sight would have extended into the intersection—even if the obstructions she identified existed—and therefore, she would have been able to see the oncoming driver. The court concluded that the alleged obstructions constituted a condition, rather than a cause, of her accident.

¶ 11     Cosovic now appeals, again distinguishing *Kirschbaum* on the grounds claimed in her response to the motion to dismiss and relying on *Aurora* as a case in which the governmental unit enacted ordinances that gave rise to a duty on that unit to remove trees that created dangerous conditions on public streets. She specifically takes issue with the circuit court's analysis of *Kirschbaum* because, as she alleges, the court overlooked the crucial factual distinction between that case and the present matter, which was that the municipality in *Kirschbaum* had placed clearly visible stop signs at both streets of the intersection and Skokie had not, and the court in the former case found that placing stop signs at each corner successfully discharged the municipality's duty to the plaintiff. Cosovic now claims that she never admitted that the stop sign she encountered was clearly visible or that she saw the stop sign. She further maintains that Skokie created a duty for

itself because of its own ordinance, and then it violated that ordinance, and that she never claimed that the stop sign was clearly visible to her. She next takes issue with the Zimmerman Affidavit and the photos of the intersection, claiming that the affidavit challenges the factual sufficiency of her claims, which is not appropriate for a Section 2-619 motion to dismiss; she further disputes the validity and relevance of Zimmerman's testimony and the photo exhibits, and argues that her affidavit should be given greater weight than Zimmerman's because Cosovic was the only one of the two who witnessed the condition of the intersection at the time of the accident.

¶ 12    Skokie responds that it satisfied its common law duty to reasonably maintain its roads in a safe condition, as codified in the Tort Immunity Act, 745 ILCS 10/3-102, which did not extend so far as to require the municipality to insure against all accidents occurring on the public way. It argues that it satisfied its duty by placing a visible stop sign at the intersection, and there is no rule in Illinois that municipalities breach their duty of care by allowing visual obstructions in areas adjacent to intersections where there is a visible, properly maintained traffic signal. The municipality also has absolute immunity in its decision not to place a traffic signal at the cross-street. Skokie maintains that all of Cosovic's pleading and testimony regarding the stop sign and her actions at the intersection make it clear that she saw the stop sign and approached the intersection, therefore negating her claim that obstructions to visibility in the intersection caused her accident. Skokie further notes that it does not have a duty of strict liability to prevent all obstructions from intruding onto its roadways; rather, it has a duty to keep its streets and sidewalks in a reasonably safe condition, which is done by the village's Forestry Department. The Department has policies and procedures in place for inspecting and maintaining trees, including investigating accidents that may involve obstructions caused by those trees. This, Skokie argues, satisfies its duty of reasonable care codified in the Tort Immunity Act, 745 ILCS 10/3-102.

¶ 13    Skokie also notes that in order to maintain a valid cause of action, the Act requires Cosovic to plead that Skokie had actual or constructive notice of the existence of the alleged unsafe condition. She states in her Amended Complaint that there were at least seven motor vehicle accidents at that intersection between January 1, 2013 and September 21, 2018. However, she does not claim that these accidents were caused by visual obstructions at the intersection. Skokie further argues that, since Cosovic failed to establish actual or constructive notice, it had absolute immunity pursuant to the Tort Immunity Act, 745 ILSC 10/2-201 over the discretionary decisions regarding how to inspect and maintain its streets, and how to inspect, maintain, and prune its trees. It additionally claims that, given the policies and procedures it had in place regarding tree maintenance, the accident was insufficiently foreseeable to give rise to a duty of care to the plaintiff.

¶ 14    Cosovic argues that much of Skokie's response should be stricken because the village failed to raise those points in its original motion to dismiss. She further contends that Skokie cannot claim that her negligence was an intervening cause of the collision, because there is nothing in the record to support the claim that she—or the other driver—was driving negligently. She maintains that the crucial distinctions between the present matter and the various cited traffic accident cases are the lack of a stop sign for the driver in cross traffic, and that Skokie created and violated the legal duties codified in its Municipal Code that required it to remove visual obstructions. She similarly relies on Sections 90-42 and 90-43 of the Municipal Code to counter Skokie's arguments that she failed to plead actual or constructive notice and that the Tort Immunity Act immunizes the village from liability, as well as arguing that whether she can prove constructive notice or not is a matter for the jury to determine and is premature on a motion to dismiss. She also claims that Skokie cannot use the Zimmerman Affidavit to show that the photograph attached to the affidavit

is an accurate depiction of the intersection on the date of the accident, because Zimmerman testified that she was not at the intersection on the date of the accident and could not recall inspecting the intersection prior to 2019, and therefore she is not qualified to authenticate the photograph.

¶ 15                                ANALYSIS

¶ 16                          Standard of Review

¶ 17    A Section 2-619.1 motion allows for a combined motion to dismiss under Sections 2-615 and 2-619, as well as motions for summary judgment under Section 2-1005. *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 688 (1st Dist. 2004).

¶ 18    A Section 2-615 motion to dismiss presents the question of whether the plaintiff has pled sufficient facts in the complaint to entitle him to relief if proven. *Powell v. American Service Ins. Co.*, 2014 IL App (1st) 123643, ¶ 13. In reviewing a dismissal pursuant to Section 2–615, all well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Id.* A dismissal pursuant to Section 2-615 is only proper where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Id.*; *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill.App.3d 1028, 1033 (1st Dist. 2001). A plaintiff cannot simply rely upon conclusions of law or fact unsupported by specific factual allegations. *Powell*, 2014 IL App (1st) 123643, ¶ 13; *Grund v. Donegan*, 298 Ill.App.3d 1034, 1039 (1st Dist. 1998). The standard of review for a dismissal under Section 2-615 is *de novo*. *Powell*, 2014 IL App (1st) 123643, ¶ 13.

¶ 19    An order of dismissal pursuant to a Section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2019)) is similarly reviewed *de novo. Porter v. Decatur Memorial Hosp.*, 227 Ill. 2d 343, 352 (2008). The Section 2-619 motion admits as true all well-pleaded

facts, all reasonable inferences to be drawn from the facts, and the legal sufficiency of the claim. *Id*. In addition, all pleadings and supporting documents must be construed in the light most favorable to the non-moving party. *Id*. A dismissal of a pleading pursuant to Section 2-619 is based on certain defects or defenses that defeat the claim. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18.

¶ 20    A motion to dismiss under Section 2-619(a)(9) specifically argues that the pleadings are barred by an affirmative matter not otherwise listed in this Section. 735 ILCS 5/2-619(a)(1) (West 2019). An affirmative matter under Section 2-619(a)(9) is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). In a Section 2-619(a)(9) motion, "the defendant does not admit the truth of any allegation in plaintiff's complaint that may touch on the affirmative matter raised in the 2-619 motion." *Barber-Colman v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992). Where the movant supplies an affirmative matter, the opposing party cannot rely on bare allegations alone to raise issues of material fact. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). Neither conclusory allegations nor conclusory affidavits are sufficient to defeat properly submitted facts in a Section 2-619 motion. *Allegis Realty Investors v. Novak*, 379 Ill. App. 3d 636, 641 (2008). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 21                          Arguments Properly Raised On Appeal

¶ 22    As an initial matter, Cosovic argues that many of the points raised by Skokie in its response on appeal have been waived because Skokie did not argue them in its motion to dismiss. *See Tomaso v. Plum Grove Bank*, 130 Ill.App.3d 18, 25 (1st Dist. 1985) ("It is the general rule that the theory upon which a case is tried cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time in the reviewing court.") The specific arguments that she alleges should be stricken are: (1) that Cosovic was required to plead evidence of similar accidents, rather than any kind of accident, to claim that Skokie was aware of the specific dangerous condition caused by obstructions at the intersection; (2) that Cosovic's failure to plead actual or constructive notice means her claim is barred by Section 3-102 of the Tort Immunity Act; (3) that imposing the duty of "hypervigilance" that Cosovic seeks onto Skokie would be overly burdensome for municipalities; (4) that it was not reasonably foreseeable that the Forestry Department's procedures and policies for maintaining its trees would cause Cosovic's accident; (5) that Cosovic cannot controvert the judicial admissions made in her original and amended complaints that she was struck on the driver's side, and thus cannot claim that an obstruction to her right, where the stop sign was posted, caused her accident; and (6) Cosovic does not clearly plead how an obstruction caused her accident, as she claims both that tree branches blocked her view of the stop sign and that she came to a full stop at the stop sign.

¶ 23    While it is well-established that an argument raised for the first time on appeal has been waived, an appellee may raise any arguments supported by the record in its support of the trial court's judgment, even if it had not previously advanced such arguments, as long as the arguments are commensurate with the issues presented before the trial court. *Dow v. Columbus-Cabrini Medical Center*, 274 Ill.App.3d 653, 655-56 (1st Dist. 1995); *see also Tomaso¸* 130 Ill.App.3d at

25 (An appellee may "defend a judgment on appeal by raising an issue not considered by the trial court if the necessary factual basis for determination of the point is contained in the record.") In its motion to dismiss, Skokie argued that Cosovic had failed to plead that the village owed her more than a common law duty to maintain public roads in a reasonably safe condition, that it had breached that duty, that any obstructions prevented her from seeing and obeying the stop sign, or that Skokie had violated any duty it owed pursuant to its Municipal Code. Skokie raised the issue of Zimmerman's testimony that there were no trees, shrubs, or bushes obstructing any part of the stop sign, as well as the Tort Immunity Act argument it presents on appeal. It also argued that she presented no facts indicating that Skokie had actual or constructive notice of the allegedly dangerous condition caused by obstructions in the intersection, and that nothing in the record suggests that the seven prior accidents she references were the result of trees or similar foliage obstructing any part of the road or traffic signs. On appeal, Skokie responds to Cosovic's appeal with the same points as in its original motion to dismiss. All of the arguments that Cosovic claims it has waived were either directly mentioned before the circuit court, or expand on points Skokie previously made, in order to respond to Cosovic's arguments on appeal. None of them require introducing new facts into the record. As such, we can properly consider the entirety of Skokie's response to Cosovic.

¶ 24                          The Tort Immunity Act and Notice

¶ 25    As an initial matter, Cosovic pleads in her Amended Complaint that Skokie's alleged negligence in failing to remove the dangerous condition at the intersection was in violation of Section 3-102 of the Tort Immunity Act. As the circuit court stated in its opinion, the Tort Immunity Act is not a source of liability; rather, it provides defenses and immunities for the actions of public entities. *See* 745 ILCS 10/ 1-101.1(a) ("The purpose of this Act is to protect local public

entities and public employees from liability arising from the operation of government. It grants only immunities and defenses."); *Sparks v. Starks*, 367 Ill.App.3d 834, 838 (1st Dist. 2006) ("[I]n the Act, the legislature specifically provides that the purpose of the Act is to protect public employees from liability arising from the operation of government and the Act "grants only immunities and defenses." 745 ILCS 10/ 1–101.1 (West 2004). Implicit in this declaration is the legislature's intent that the Act does not create new liabilities that did not previously exist in common law.") Therefore, the Act can only serve as an affirmative defense for Skokie, rather than a basis for its liability.

¶ 26    The Tort Immunity Act includes a notice element beyond what was required at common law in order to show a public entity's liability for injury:

> [A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition…, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition. 745 ILCS 10/3-102(a).

*See also Krivokuca v. City of Chicago¸* 2017 IL App (1st) 152397, ¶ 46. The Act further states that a public entity does not have constructive notice if it establishes either that the dangerous condition "would not have been discovered by an inspection system that was reasonably adequate considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise" or that the public entity "maintained and operated such an inspection system with due care and did not discover the condition." 745 ILCS 10/3-102(b).

¶ 27    Here, Cosovic does not allege that Skokie had actual notice of the alleged dangerous condition. Rather, she claims that Skokie had constructive notice because there were at least seven crash reports filed between 2013 and 2018. Constructive notice exists where the condition "existed

for such a length of time that the public entity might have known of the condition by the exercise of reasonable care and diligence." *Mtengule v. City of Chicago¸* 257 Ill.App.3d 323, 328-29 (1st Dist. 1993). Factors to take into account include the length of time and conspicuousness of the condition. *Id* at 329. The test to determine whether a party could have reasonably obtained the requisite knowledge to constitute constructive notice is what it could have known "by the information within [its] reach if [it] used the vigilance that the law requires of [it]." *LaSalle National Bank v. Dubin Residential Communities Corp.*, 337 Ill.App.3d 345, 353 (1st Dist. 2003) (quoting Pyle v. Ferrell, 12 Ill.2d 547, 554 (1958)).

¶ 28   Cosovic does not specifically claim that the alleged seven prior crashes occurred at the intersection; however, even assuming that they did, she does not claim that they were caused by or in any way involved trees obstructing a driver's view of the intersection. Furthermore, seven accidents of unknown cause over approximately five years is hardly actual or constructive notice that Skokie's trees were causing an unsafe condition at the intersection. Any weight that would have been given to the length of time provided is undermined by the low number of accidents— averaging one or two per year—and no facts pled that would establish these incidents as having been caused by a dangerous condition rather than simple driver error or misfortune. As we have previously held, if a plaintiff pleads that a specific, rather than general, hazardous condition exists, she cannot submit evidence of dissimilar accidents to support that claim. *Templeton v. Chicago and North Western Transportation Co.,* 257 Ill.App.3d 42, 48 (1st Dist. 1993). Car crashes can have various different causes, including but certainly not limited to driver visibility obstructions, but Cosovic does not plead that the particular hazard she alleges caused her accident also caused any of the crashes she references in her Amended Complaint.

¶ 29    Additionally, regarding whether Skokie had a reasonably adequate inspection system in place that should have discovered a dangerous condition, Zimmerman, as Skokie's Village Forester at the time of the accident, gave uncontroverted testimony regarding the reporting and inspection procedures Skokie had in place regarding accidents involving obstructions on public streets. Zimmerman further stated in her affidavit, which is supported by photographic exhibits, that the publicly owned land containing the stop sign at the intersection in question was not obstructed by any trees, bushes, or foliage and there was nothing for the Forestry Department to maintain in order to ensure visibility of the stop sign. Cosovic does not plead or testify otherwise. *See Antler v. Classic Residence Management Ltd. Partnership*, 315 Ill.App.3d 259, 267 (1st Dist. 2000) (holding that when facts alleged in an affidavit are not contradicted, those facts are taken as true for purposes of a motion to dismiss); *Barber-Colman Co.*, 236 Ill.App.3d at 1078. Zimmerman also testified that the Forestry Department receives police reports related to the Department's functions, and she had not received any reports regarding a dangerous condition at the intersection at issue. Because Cosovic does not plead that Skokie had sufficient notice of any dangerous condition at the intersection, and or plead any facts indicating that Skokie's Forestry Department's procedures for inspecting and maintaining trees was insufficient to satisfy any duty to keep the streets clear of tree obstructions, Cosovic's claim necessarily fails, and the circuit court properly dismissed the Amended Complaint.

¶ 30    Even interpreting the facts in the light most favorable to Cosovic, it would be quite the leap of logic to read her statement that she stopped at the traffic stop to mean that she did not see it, and only knew to stop based on her familiarity with the road and the fact that there should have been a stop sign in the allegedly obscured spot before the intersection. If her claim was that Skokie negligently allowed for trees and/or other obstructions to obscure the stop sign from her line of

sight, she was given multiple opportunities to state the fact that the obstructions blocked her view of the stop sign—in her original complaint, her Amended Complaint, and in her affidavit. Instead, she maintained that she came to a full stop at the stop sign. Therefore, the circuit court did not err in treating Cosovic's testimony and pleadings regarding this issue as an undisputed fact that she saw the stop sign. Furthermore, if she did not see the stop sign but made a lawful stop regardless, then the circuit court was correct in finding that Skokie's failure to remove any existing obstruction from the sign was not the cause of her accident.

¶ 31    <u>Proximate Cause and Cosovic's Testimony Regarding the Stop Sign</u>

¶ 32    Cosovic also points to her statement that the trees and other obstructions blocked her view of cross-traffic as properly creating a basis for pleading proximate cause, which the circuit court rejected by speculating that the obstructions, if any existed, could not have been more than a mere condition of her accident because she would have been able to see cross-traffic at some point before entering the intersection after having been slowed down by the stop sign. In doing so, Cosovic attempts to distinguish the cases cited by the circuit court regarding the condition-vs-cause analysis on the grounds that the caselaw requires the court to determine whether "the defendant's negligence was a material and substantial factor in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct." *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258-59 (1999). Cosovic maintains that there was no negligent party in the present matter. While we take the position that the circuit court's conclusion based on the facts pled is premature on a motion to dismiss, we agree that the pleadings fail to establish that Skokie's acts or omissions caused the accident, based on the lack of notice and the lack of pleading that the inspection and maintenance policies and

procedures that Skokie's Forestry Department had in place were insufficient or negligently performed to an extent that Skokie violated any duty owed to drivers like Cosovic.

¶ 33    Having failed to adequately plead actual or constructive notice, Cosovic's complaint is also barred by the affirmative matter of the village's absolute immunity for its discretionary decisionmaking in maintaining village property. The Tort Immunity Act states in relevant part:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused. 745 ILCS 10/2-201.

Whether a governmental function is discretionary or ministerial in nature is determined on a case-by-case basis. Discretionary acts are "those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township*, 167 Ill.2d 466, 473 (1995). It is fairly clear that the development and enactment of policies regarding tree maintenance and inspection, as well as responding to accidents caused by trees on public property, fall within the scope of discretionary acts. Cosovic argues to the contrary, on the grounds that once the village had notice of the condition, the act of responding to the dangerous condition was ministerial. Even if that were so, there are no facts indicating that Skokie had said notice.

¶ 34          The Zimmermann Affidavit and Photo Exhibits of the Intersection

¶ 35    Cosovic also takes issue with the weight and credibility that should be given to Zimmerman's testimony, including her affidavit, and the photo that Zimmerman stated accurately depicted the intersection around the time of the accident. Cosovic provides her own photos, from Google Maps, which were taken in September 2011. Skokie, in turn, argues that Zimmerman sufficiently authenticated her photo, and Cosovic's should be disregarded as irrelevant. These

arguments all go towards the credibility of the evidence and are not germane to this appeal of a decision on a motion to dismiss. All of the photos are of the intersection at issue, and there does not appear to be anything about them that would warrant finding them inadmissible. Furthermore, none of the photos submitted by either side show trees encroaching onto the intersection. Had the complaint survived the motion to dismiss, the parties could have made their respective cases for which version better depicted conditions at the time of the accident, but given that Cosovic admits to successfully stopping at the stop sign and that no submitted photo shows trees reaching into the intersection, dismissal is proper regardless of which photos provide a more accurate depiction of the conditions at the time of the accident.

¶ 36    Similarly, the Zimmerman Affidavit is a valid affidavit that is properly submitted as evidence into the record. We decline to make any findings as to the truthfulness, relevance, or credibility of anything contained in her affidavit or her deposition testimony; we are reviewing the circuit court's decision granting Skokie's motion to dismiss, and Cosovic's arguments regarding Zimmerman's testimony go beyond the scope of that analysis. Our decision does not hinge on the validity of any of the contested evidence, and we need not further analyze the arguments pertaining to them.

¶ 37             Whether Skokie's Municipal Code Gave Rise to a Duty of Care

¶ 38    Having found that Cosovic has not pled that Skokie had actual or constructive notice of the allegedly dangerous condition, or breached its duty to maintain roads in a reasonably safe condition, we turn now to Cosovic's argument that, even if she cannot maintain her cause of action based on Skokie's breach of its common law duty, her claim should not have been dismissed because Skokie violated Sections 90-42 and 90-43 of its Municipal Code. These provisions cover trees on public property and obstructions at intersections, respectively. Cosovic claims that, by

pleading in her Amended Complaint that Skokie violated these provisions, she has sufficiently presented *prima facie* evidence of negligence in order to maintain her cause of action. In support, she cites to the *Aurora* decision, in which the court held that, once a governmental unit adopts a plan to make public improvements, such as through enacting an ordinance to that effect, it owes a duty to a plaintiff to maintain those improvements. *Aurora*, 71 Ill.2d at 11.

¶ 39    In that case, our supreme court held that the plaintiff drivers had properly pled a cause of action against the City of Aurora when they alleged that the city owed them a duty of care to keep its streets free from obstructions, and violated that duty of care by allowing a tree located at or near the intersection to obstruct the view of drivers and create a dangerous condition. *Id*. at 5, 8. The court found that the Tort Immunity Act did not apply to shield the city from liability, because the city had relevant ordinances in its Municipal Code that gave rise to a duty beyond the common law duty of ordinary care to maintain its streets in a condition safe for use by the public. One ordinance states that no person shall plant or maintain within the city limits any plant that obstructs the view of anyone driving along city streets, and the other mandates that streets and alley be kept free from obstructions, encumbrances, and encroachments. *Id.* at 10. The court held that while Aurora did not adopt a plan of public improvement that would have created a duty on the city to maintain those improvements, the alleged violations of the city's own two ordinances were *prima facie* evidence of negligence, sufficient to maintain the plaintiff's cause of action. *Id.* at 11. The ordinances created a duty for anyone, including the city, to refrain from having plants obstruct city streets, whether they be planted on private or public property, and further created a duty for the city to keep streets free of obstructions. Having found that the plaintiffs had properly pled a duty of care, the court went on to state that the questions of proximate cause and foreseeability, as well

as whether the tree in question actually interfered with visibility at the intersection, were questions of fact for the jury to determine. *Id.* at 11-12.

¶ 40    In the present case, Cosovic cites two provisions of Skokie's Municipal Code that allegedly gave rise to a duty owed by Skokie to drivers like Cosovic. Section 90-42 of the Municipal Code states, in relevant part:

> (a)(1) It is hereby declared to be the policy of the Village to regulate and control the planting, transplanting, removal, maintenance and protection of trees and shrubs in the Village in order to eliminate and guard against dangerous conditions which may result in injury to persons using the streets, alleys, sidewalks or property of the Village * * *.
> (2) The Village Manager or designee is hereby empowered to superintend and regulate the planting, preservation, protection and maintenance of trees on all public ways of the Village.
> Village of Skokie Code of Ordinances, ¶ 90-42(a) (enacted May 2, 2022).

Section 90-43 states, in relevant part:

> The owner or occupant of every lot or parcel of land adjoining a street intersecting with another street upon which any trees, shrubs, bushes or plants are growing shall trim, prune or cut the trees, shrubs, bushes or plants or cause the trees, shrubs, bushes or plants to be trimmed, pruned or cut so as not to obstruct the passage of light from any streetlight or traffic signal light or interfere with or obstruct the vision of persons using the streets. The existence of any [abovementioned obstruction] is hereby declared to constitute a public nuisance. It shall be unlawful for any owner or occupant of such premises to fail, neglect or refuse to abate such nuisance by removing, trimming, cutting or pruning such tree, shrub, bush or plant within 5 days after being notified in writing to do so by the Village Manager or designee.
> Village of Skokie Code of Ordinances, ¶ 90-43(a) (enacted May 2, 2022).

¶ 41    As an initial note on the parties' arguments regarding whether *Aurora* is factually distinguishable because the intersection at issue in that case was not controlled by any stop signs or other traffic signals, this is irrelevant, as the court in *Aurora* does not discuss whether the city was negligent in its decision not to place traffic signs at the intersection; rather, the discussion is limited to the two city ordinances regarding trees and other obstructions on city streets and intersections. Additionally, Cosovic does not plead that Skokie was negligent in placing, not placing, or maintaining any traffic signs. Next, we note that in its order and opinion, the circuit

court does opine on whether and when Cosovic would have been able to see the other driver, and whether Cosovic's actions were actually the proximate cause of her accident; as in *Aurora*, it is not timely for the circuit court to make these inferences from the facts. However, we still conclude that, based on the undisputed facts in the record and on Cosovic's pleadings, she has failed to sufficiently plead a valid cause of action, whether under the common law duty of care or any duty created under Skokie's ordinances.

¶ 42   Turning to the two ordinances in question, we find that the first does not create a duty for Skokie; rather, it states a policy of the village—one that is carried out by the Forestry Department, as explained in Zimmerman's testimony. The ordinance further empowers the village to carry out that policy. That is not the same as creating requirements that the village do anything, as the ordinances in *Aurora* did. The second ordinance does create a duty to maintain trees such that they do not obstruct visibility on village streets. However, as we discuss above, the undisputed material facts in the record do not support a conclusion that there was an obstruction at the intersection, that Skokie had reason to know of an obstruction at the intersection, or that an obstruction at the intersection caused the accident. Merely establishing that a duty arising from local ordinances existed as in *Aurora* is insufficient to show that dismissal was not warranted in the present case, as this is only part of what Cosovic was required to plead for her negligence cause of action. In light of our discussion of notice and foreseeability, we find that the circuit court did not err in dismissing the complaint.

¶ 43   While Cosovic is correct to note that the other driver obstruction cases relied upon by Skokie are distinguishable because they did not involve the violation of a duty arising from a local ordinance, they are nonetheless instructive. In *Kirschbaum*, the court noted that the Tort Immunity Act did not impose a duty on public entities to trim or remove trees and other vegetation causing

obstructions on streets, and distinguished *Aurora* because the latter case involved the violation of a duty stemming from local ordinance rather than common law. *Kirschbaum*, 365 Ill.App.3d at 492-93. The court further found that a public entity satisfied its common law duty to keep its streets in a reasonably safe condition by placing a stop sign at an intersection. *Id.* at 493.

¶ 44 The court in *Boylan v. Martindale* found similarly, that the defendant city properly discharged its duty of ordinary care to maintain its streets in a reasonably safe condition by posting working stoplights at the intersection, "regardless of whether or not the drivers' view of the area extending laterally from the intersection was restricted," where the plaintiff did not contend that his view of the stoplight was obstructed. 103 Ill.App.3d 335, 340 (2d Dist. 1982). The court also found that even if a duty existed, the trial court did not err in concluding as a matter of law that the city's failure to trim or remove trees near the intersection constituted a condition, rather than the proximate cause, of the accident, because the vehicle accident in that case was not reasonably foreseeable as the result of the city's alleged negligence in failing to remove trees from the area adjacent to the intersection where the city maintained working stoplights. *Id.* at 342-43.

¶ 45 In *Manning v. Hazekamp*, the court similarly held that the defendant city upheld its duty to maintain its roads in a reasonably safe condition by placing stop sign at the intersection, even if parked cars obstructed the plaintiff driver's view. 211 Ill.App.3d 119, 126 (4th Dist. 1991). The court found that the parked cars that the plaintiff argued created a dangerous condition by obstructing visibility in the intersection "were not dangerous by themselves but only became dangerous when drivers attempted to see around them to make a left-hand turn," and the city should not have to guard against the negligence of drivers that failed to notice oncoming cross-traffic. *Id.* The court weighed various factors to determine whether a duty should be imposed upon the defendant city under the circumstances in stating, "[t]he foreseeability that the defendant's conduct

will result in injury to another as well as the likelihood of an injury occurring, the burden on the defendant by imposition of a duty, and the consequences of imposing this burden must all be considered in determining that a duty exists." *Id.* at 123-24.

¶ 46    While the present matter is distinguishable because Cosovic does plead the existence of a duty under Skokie's Municipal Code, the facts here are in line with what our caselaw regarding similar accidents from alleged obstructions caused by trees or other objects adjacent to an intersection. Taking all well-pled facts in the Amended Complaint as true, as well as all reasonable inferences drawn from those facts, this matter is similar to the above-cited cases, wherein Skokie also had, according to the complaint, an unobstructed stop sign at the intersection, and Cosovic fails to establish how any trees growing near the intersection could foreseeably have caused the accident, rather than furnishing a condition that became dangerous due to the intervening acts of other drivers.

¶ 47                              The Circuit Court's Dismissal Order

¶ 48    While the circuit court does not specify whether it granted the motion under Section 2-615 or 2-619, we may affirm the circuit court's judgment on any proper grounds supported by the record. *American Service Ins. Co. v. City of Chicago*, 404 Ill.App.3d 769, 776-77 (1st Dist. 2010). Similarly, we disagree with the circuit court drawing certain conclusions from the facts, and with its findings that Cosovic could not plead a duty premised on the Municipal Code. However, for the reasons stated above, we find that, taking all well-pled facts as true, Cosovic failed to plead a valid cause of action. We agree with the circuit court that the Tort Immunity Act cannot be a basis for Cosovic's cause of action, and that she failed to sufficiently plead a violation of any duty Skokie owed under its Municipal Code.

¶ 49    Additionally, based on the arguments presented by Skokie on its motion to dismiss, and the circuit court's findings in its ruling on that motion, there is no genuine issue of material fact that should have precluded dismissal. The only uncertainty regarding the facts in the record stems from Cosovic's own inconsistent pleading regarding where, precisely, the alleged obstruction was located and how that caused the collision. However, we must take it as true that she was able to come to a full stop at the stop sign and proceed with caution into the intersection, as she claims, and we find that this supports the circuit court's decision.

¶ 50                                     CONCLUSION

¶ 51    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 52    Affirmed.